IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTIN LYONS, #M19540, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY WILLS, <br> SARA MCCLURE, <br> JOSHUA A. SCHOENBECK, <br> JANE DOE 1, <br> DONOVAN RICHARDSON, <br> LIEUTENANT WARD, <br> COUNSELOR VALROY, <br> JOHN DOE EDWARDS, <br> JOHN DOE 1, *personal property officer,* <br> JOHN DOE 2, *personal property officer,* <br> JOHN DOE, *mailroom officer,* <br> JOHN DOE GARCIA, <br> LATOYA HUGHES, <br> RYAN KILDUFF, <br> ALEX MALDONADO, <br> ANTHONY B. JONES, <br> JANE DOE 2, <br><br> Defendants. | Case No. 23-cv-02801-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Martin Lyons, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff arrived at Menard Correctional Center (Menard) on October 22, 2022. (Doc. 14, p. 6). On November 5, 2022, Plaintiff notified Correctional Officer Donovan Richardson that his tablet was no longer working and that he needed another from commissary. Richardson responded, "that's not going to happen." Later that day when Plaintiff saw Richardson for a second time, he asked Richardson for a "crisis team." Richardson responded by telling Plaintiff to "cuff up." Plaintiff was taken to a bullpen area. (*Id.*). While in the bullpen, Lieutenant Ward asked Plaintiff, "why are you threatening my officers?" Plaintiff told Ward that he did not threaten anyone and had only asked for a crisis team. Ward told Plaintiff he was going to segregation. Plaintiff was taken to segregation without any of his property and placed in a filthy cell with no "bed roll." Plaintiff has a skin disorder, and the cell caused him to break out and bleed. (*Id.*).

While in restrictive housing, Plaintiff was not given any of his property and was designated "pink tag." (Doc. 14, p. 6). Receiving a pink tag designation means that during the first seven days in segregation, Plaintiff was not allowed to shower, and for the first thirty days, he was not given his personal property, allowed to attend mental health groups, allowed yard privileges, or allowed visitors or access to email. (*Id.* at p. 7). For eighteen to nineteen days, Plaintiff did not have "ventilating heat" in his cell, his personal hygiene items, sheets, bedding, cleaning supplies, paper, pens, or books. (*Id.*).

On November 9, 2022, Plaintiff had a hearing before Adjustment Committee Members

Joshua Shoenbeck and Jane Doe. (Doc. 14, p. 7). Prior to the hearing, Plaintiff provided a written statement with the name of a witness. The Adjustment Committee claimed the witness said he did not see anything. Shoenbeck told Plaintiff, "I don't care how many witnesses you have you aint beating shit in Menard." Jane Doe informed Plaintiff, "we know everything about you from Lawrence." Plaintiff was found guilty of the disciplinary charges. (*Id.*). He was sanctioned with twenty-one days in segregation and one month of commissary restrictions. (*Id.* at p. 24).

When Plaintiff was released from segregation to general population, he went to collect his property. (Doc. 14, p. 8). John Doe 1 and John Doe 2 were distributing property. Plaintiff informed them that he was missing a lot of his belongings. John Doe 1 told Plaintiff that his property was not inventoried. Plaintiff said he was not going to sign the property form since items were missing. John Doe 2 told Plaintiff that he either sign for the property or what was there would be thrown away. (*Id.*).

Plaintiff states that on July 6, 2023, Plaintiff was again taken to segregation. (Doc. 14, p. 9). This time for abusing email privileges. He was assigned to another filthy cell, given a pink tag designation, and not provided cleaning supplies, hygiene products, a bed roll, or personal property. Plaintiff asked Garcia, the gallery officer, for assistance in receiving his property, but Garcia refused to help. During his time in segregation, Plaintiff continued to be denied personal property, pens, paper, letters, envelopes, personal hygiene items, and cleaning supplies by Garcia, John Doe 1, and John Doe 2. Plaintiff had to sell his food trays to receive these items from other inmates, and as a result, went without food and lost twenty pounds. (*Id.*).

Plaintiff was not given a disciplinary hearing, and it was falsely claimed by Adjustment Committee Members Shoenbeck and Maldonado that Plaintiff refused to attend the hearing. (Doc. 14, p. 9).

Plaintiff further alleges that on many occasions his incoming and outgoing mail was stolen by John Doe Mail Supervisor. (Doc. 14, p. 8).

## PRELIMINARY DISMISSAL

Plaintiff alleges that on many occasions, while at Menard, his incoming and outgoing mail has been unlawfully stolen by John Doe, the mail supervisor. (Doc. 14, p. 8). The Court finds these allegations not properly joined in this lawsuit. *See* FED. R. CIV. P. 20(a)(2). The Court will exercise its discretion and dismiss any and all claims regarding the unlawful theft and mishandling of Plaintiff's mail against John Doe, the mail supervisor, from this case without prejudice. *See* FED. R. CIV. P. 21; *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Fourteenth Amendment claim against Richardson, Ward, Shoenbeck, Jane Doe 1, and Jones for punishing Plaintiff without due process of law regarding Plaintiff's disciplinary ticket dated November 5, 2022.

**Count 2:** Fourteenth Amendment claim against Shoenbeck and Maldonado for punishing Plaintiff without due process regarding placement in segregation on July 6, 2023.

**Count 3:** Fourteenth Amendment claim against Wills, McClure, Valroy, Kilduff, Hughes, and Jane Doe 2 for denying Plaintiff due process by mishandling and denying his grievances.

**Count 4:** Fourteenth/Eighth Amendment claim against Richardson and Ward for denying Plaintiff's request to speak to a crisis team member on November 5, 2022, and Garcia for denying Plaintiff's request to speak to a crisis team member in July 2023.

**Count 5:** Fourteenth Amendment claim against John Doe 1, John Doe 2, Edwards, and Garcia for denying Plaintiff his property without due process of law.

> **Count 6:** First Amendment denial of access to courts claim against John Doe 1, John Doe 2, and Garcia for denying Plaintiff access to his legal materials.
>
> **Count 7:** Eighth Amendment claim against John Doe 1, John Doe 2, and Edwards for housing Plaintiff in unconstitutional conditions from November 5, 2022, through November 23, 2022.
>
> **Count 8:** Eighth Amendment claim against John Doe 1, John Doe 2, and Garcia for housing Plaintiff in unconstitutional conditions from July 6, 2023, through August 18, 2023.
>
> **Count 9:** Fourteenth Amendment claim equal against Garcia, John Doe 1, and John Doe 2 for withholding Plaintiff's personal property with no rational basis but returning personal property to other inmates.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Counts 1 and 2

Prisoners are not entitled to Fourteenth Amendment due process protections unless they can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (*per curiam*). Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v.*

---

[1] *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007).

*Welborn*, 933 F.3d 705, 721 (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause."). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle,* 933 F.3d at 721 (citing *Marion*, 559 F.3d at 697). The Seventh Circuit Court of Appeals has indicated that when a term of segregation is limited, typically to periods of less than six months, "an inmate's liberty interest in avoiding segregation is limited or even non-existent." *Marion*, 559 F.3d at 697 & n.2 (collecting cases). *See also Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (no due process violation for ninety days in disciplinary segregation); *Hoskins v. Lenear* 95 F.3d 372, 374-75 (7th Cir. 2005) (no due process violation for sixty days in disciplinary segregation); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (no due process violation for seventy days); *Hardaway v. Meyerhoff,* 734 F. 3d 740, 744 (7th Cir. 2013) (no liberty interest implicated where inmate spent six months in segregation with a violent cellmate and "was permitted to use the shower and prison yard once every week").

Here, Plaintiff's term of segregation was twenty-one days as a result of the November 5, 2022 disciplinary ticket. "Such a short term is not sufficient to invoke a protected liberty interest absent truly exceptional circumstances, though the Court is not aware of a case where circumstances have been so exceptional that such a short term invoked a liberty interest." *Haynes v. Pritzer,* No. 23-cv-4069-DWD, 2024 WL 914898, at *5 (S.D. Ill. Mar. 4, 2024) (citing *Obriecht v. Raemisch,* 565 Fed. App'x 535, 540 (7th Cir. 2014) (finding that 78 days sleeping on a mattress placed directly on a wet floor was deplorable but did not invoke a liberty interest); *Kervin v. Barnes,* 787 F.3d 833, 836-37 (finding that considerably less than six months in harsh segregation

may invoke a liberty interest, but concluding that 30 days without telephone, commissary, or the grievance procedure were not sufficient to invoke a liberty interest)). *See also Hardaway,* 734 F. 3d at 744 (inmate not deprived of liberty interest when he spent six months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *McCoy v. Atherton,* 818 F. App'x 538, 541-42 (7th Cir. 2020) (holding that three months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship). Furthermore, Plaintiff does not have a protected interest in maintaining certain privileges, such as access to the commissary, visitation, and weekly showers and yard access. *See Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015); *Thomas*, 130 F.3d at 761 (denial of exercise, work opportunities, and ability to leave cell for seventy days "did not greatly exceed what a prison inmate could expect from confinement generally" and thus did not trigger a due process liberty interest). Because twenty-one days in segregation and a "pink tag" designation do not invoke due process protections, Count 1 is dismissed.

Plaintiff also has not sufficiently pleaded that he was deprived of a liberty interest without due process of law regarding being placed in segregation on July 6, 2023. Although, Plaintiff does not describe how long he stayed in segregation, the Court believes he was there for around forty-three days, until August 18, 2023. (*See* Doc. 14, p. 14). For the reasons stated above, this length of time along with the conditions alleged, do not rise to the level of an atypical and significant hardship requiring due process procedures. Count 2 is dismissed.

**Count 3**

Plaintiff cannot hold individuals liable simply because they mishandled or denied his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged

mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F. 3d 950, 953 (7th Cir. 2011). Contrary to Plaintiff's assertions, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Accordingly, Count 3 is dismissed with prejudice against Wills, McClure, Valroy, Kilduff, Hughes, and Jane Doe 2 for ignoring, mishandling, or denying Plaintiff's grievances.

**Count 4**

Plaintiff asserts that Richardson, Ward, and Garcia violated his due process rights by denying his request to speak to a crisis team member. (Doc. 14, p. 13, 15). The Court is not aware of any case law holding that due process procedures are required prior to denying a request to speak to a mental health professional. To the extent Plaintiff is bringing a substantive due process claim, the Court will examine Count 4 under the Eighth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (where a claim is covered by a more specific constitutional provision, such as the Eighth Amendment, the Supreme Court has held that the claim must be analyzed under the standard appropriate to that specific provision instead of substantive due process).

To state an Eighth Amendment claim for deliberate indifference, the plaintiff must plead that (1) the harm that befell him was objectively, sufficiently serious and a substantial risk to his or her health or safety; and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety. *Collins v. Seeman*, 462 F. 3d 757, 760 (7th Cir. 2006).

Plaintiff states that Richardson and Ward did not allow him to speak to a crisis team member and that it is practice that if an inmate says they are going to hurt anyone, they are placed on crisis watch and not sent to segregation for requesting to speak to a crisis team member. (Doc.

14, p. 13). Likewise, Garcia denied him access to crisis team personnel. (*Id.* at p. 15). There are no facts from which the Court can infer Plaintiff's safety was at risk and that Richardson, Ward, or Garcia was aware of substantial risk of danger or harm to him and ignored such risk by taking Plaintiff to segregation rather than to see a crisis team member. *See Seeman*, 462 F. 3d at 761 ("a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of" harm to himself). Accordingly, Count 4 is dismissed.

### Count 5

Plaintiff asserts that he was denied his property from November 5, 2022, through November 23, 2022, and then again from July 6, 2023, through August 18, 2023. (Doc. 14, p. 14). The loss of his property for a significant amount of time while in segregation does not amount to a due process violation. As discussed above, to state a property loss claim under the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property without due process of law. However, if the state provides an adequate remedy, Plaintiff has no colorable civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Illinois provides an adequate post-deprivation remedy; an action for damages in the Illinois Court of Claims. *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993). Thus, Plaintiff must pursue any claims for the loss of his property in the Illinois Court of Claims.

### Count 6

To state a claim for denial of access to the courts, a plaintiff must connect the defendants' conduct with his "inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey,* 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805–06 (7th Cir. 2010). This

requires a plaintiff to identify the underlying claim that was lost in the complaint. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff alleges that while he was in segregation from July 6, 2023, through August 18, 2023, he was not allowed access to his legal materials, pens, and paper, and was unable to meet a legal deadline in civil case that he was litigating in the Northern District, No. 22-cv-5846. (Doc. 14, p. 9-10, 63).

A review of the docket in Case No. 22-cv-5846 shows that Plaintiff was able to pursue his claim, despite limited access to his legal and writing materials. *See Lyans v. Doe 1-18,* No. 22-cv-05846 (N.D. Ill.).[2] He sought a motion for an extension of his deadline to amend on July 14, 2023 (Doc. 25), which was denied as premature, and then timely filed an amended complaint on July 24, 2023 (Doc. 27). Plaintiff continues to litigate the case. Thus, he has failed to plead how the limited access to his legal documents and writing materials resulted in impeding his ability to prosecute a legitimate claim. It is not sufficient that he experienced delays or inconvenience. *See Campbell v. Miller,* 787 F. 3d 217, 227 (7th Cir. 1986). Accordingly, Count 6 is dismissed.

### Counts 7-8

To prevail on an Eighth Amendment claim based on inadequate prison conditions, the plaintiff must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted).

---

[2] *See Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir. 1994) (court can take judicial notice of court documents, which are public records); *Bova v. U.S. Bank, N.A*., 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (court may judicially notice public records available on government websites) (collecting cases).

Plaintiff alleges that from November 5, 2022, through November 23, 2022, he was placed in a filthy cell with no cleaning supplies. (Doc. 14, p. 7). There was no heat and the cell reached extremely cold temperatures. He was also not given any hygiene items or bedding or allowed to use the shower. Plaintiff sought assistance from the gallery officer, Edwards, but did not receive any help. This is sufficient for Count 1 to proceed against Edwards. *See Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006) ("Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so.").

Count 7, however, will be dismissed as to the property officers, John Doe 1 and John Doe 2. There are no allegations that these defendants were aware of Plaintiff's conditions and disregarded a substantial risk of harm to him. It is not sufficient that they were property officers, had control of his personal property, and would not return it to him.

From July 6, 2023, through August 3, 2023, Plaintiff alleges that he again he was placed in a dirty cell without cleaning supplies, hygiene items, and a working toilet. (Doc. 14, p. 15). He states that the gallery officer, Garcia, did not provide him any assistance. Count 8 will proceed against Garcia.

For the reasons stated above, Count 8 is dismissed as to the property officers John Doe 1 and John Doe 2.

## Count 9

Plaintiff alleges that his right to equal protection under the laws was violated when Garcia, John Doe 1, and John Doe 2 returned personal property to other inmates in segregation but still withheld his property. (Doc. 14, p. 10). Plaintiff wrote to the John Does and spoke with Garcia, but he still did not receive his property. (*Id.* at p. 9-10). Plaintiff states that he is bringing his equal protection claim under a "class of one" theory. (*Id.* at p. 9).

The Equal Protection Clause prohibits the singling out of a person for different treatment for no rational reason. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Liberally construing Plaintiff's pleadings, he has sufficiently stated a viable equal protection claim, and Count 9 will proceed against Garcia, John Doe 1, and John Doe 2.

### AFFIDAVITS

Since filing the First Amended Complaint with the Court, Plaintiff has filed two affidavits. (Doc. 15, 17). The first affidavit contains documents that Plaintiff would like to add as exhibits to the First Amended Complaint. Generally, the Court does not allow piecemeal amendments, supplements, or exhibits to a complaint. An amended complaint supersedes and replaces the original complaint and renders the original void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). However, as a one-time courtesy, the Court will treat the exhibits included in Doc. 15 as a part of the First Amended Complaint. Going forward, Plaintiff is advised that an amended complaint must stand on its own and include all allegations against all defendants and all exhibits.

The second affidavit informs the Court that he is not sure if he has received all the orders the Court has issued in this case. (Doc. 17). He asks the Court to send him any ruling filed on the docket. The request is granted in part. The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the docket sheet. If Plaintiff desires copies of any of the filings in this civil case, he may file another motion for copies of the documents by title and document number, along with prepayment of the $0.50 per page copying fee.

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Count 9 survives screening against defendants who are not yet identified (among others): John Doe 1 and John Doe 2. However, these defendants must be identified with particularity, so the lawsuit can be served on them. The plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of these defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The current Warden of Menard Correctional Center will be added in his or her official capacity for purposes of responding to discovery aimed at identifying the unknown defendants. Once the names of these defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designations in the caption and First Amended Complaint.

### OFFICIAL CAPACITY CLAIMS

Plaintiff states that he is suing Defendants in their individual and official capacities. (Doc. 14, p. 5). To the extent that Plaintiff is seeking monetary damages, he cannot pursue official capacity claims against any of the individual defendants. *See Brown v. Budz*, 398 F.3d 9044, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages). To the extent that Plaintiff is seeking injunctive relief, the Warden of Menard is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). The Warden of Menard will be added as a party to this case for the purposes of responding to discovery regarding identification of the John Does and implementing injunctive relief. To allow Plaintiff to proceed with an official capacity claim against the remaining Defendants would be redundant. Therefore, the official capacity claims against Edwards, Garcia, John Doe 1, and John Doe 2 are dismissed with prejudice. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (state officials named in their official capacities may not be sued for monetary damages).

### REQUEST FOR THE APPOINTMENT OF COUNSEL

In the First Amended Complaint, Plaintiff asks the Court to appoint him counsel. (Doc. 14, p. 21). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff does not provide any information regarding attempts to recruit counsel on his own or whether he has been effectively precluded from doing so. Because he has not made this showing, the Court finds that Plaintiff has not made a reasonable attempt to find counsel. The request for court recruited counsel is **DENIED.** Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to: (1) contact at least three attorneys regarding representation in this case prior to filing another motion; (2) include in the motion the names and address of at least three attorneys he has contacted; and (3) if available, attach the letters from the attorneys who declined representation.

### DISPOSITION

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. All claims against John Doe the mail supervisor are **DISMISSED without prejudice** as not properly joined in this suit. **COUNTS 1, 2, 3, 4, 5,** and **6** are **DISMISSED without prejudice** for failure to state a claim. **COUNT 7** shall proceed against Edwards but is **DISMISSED without prejudice** as to John Doe 1 and John Doe 2. **COUNT 8** shall proceed against Garcia but is **DISMISSED without prejudice** as to John Doe 1 and John Doe 2. **COUNT 9** shall proceed against Garcia, John Doe 1, and John Doe 2.

The Clerk of Court shall **ADD** the Warden of Menard Correctional Center as a defendant in his or her official capacity for the purposes of identifying the unknown defendants and implementing any injunctive relief that may be ordered. Because there are no surviving claims against Defendants Wills, McClure, Shoenbeck, Jane Doe 1, Richardson, Ward, Valroy, John Doe mail room supervisor, Kilduff, Hughes, Maldonado, Jones, and Jane Doe 2, the Clerk shall **TERMINATE** them as defendants on the docket.

Because Plaintiff claims that his time in segregation impacted his health, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court is further **DIRECTED** to send Plaintiff a copy of the docket sheet. Plaintiff's request for court recruited counsel is **DENIED.** (Doc. 14, p. 21).

The Clerk of Court shall prepare for Edwards, Garcia, the Warden of Menard Correctional Center (official capacity only), and John Doe 1 and John Doe 2 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the First Amended Complaint and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above

or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   March 26, 2024**

　　　　　　　　　　　　　　　　　　　　　　　　*s/Stephen P. McGlynn*
　　　　　　　　　　　　　　　　　　　　　　　　**STEPHEN P. MCGLYNN**
　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.