IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARTIN LYONS,<br><br>      **Plaintiff,**<br><br>v.<br><br>SCOTT WHITE,<br>BRADLEY HALL,<br>C/O GARCIA,<br>C/O EDWARDS, and<br>WARDEN OF MENARD<br>CORRECTIONAL CENTER,<br><br>      **Defendants.** | Case No. 23-cv-02801-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Martin Lyons, an inmate of the Illinois Department of Corrections (IDOC), initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the First Amended Complaint, Plaintiff alleges that during his incarceration at Menard Correctional Center (Menard), he was held in unconstitutional conditions of confinement while in segregation from November 5 - November 23, 2022, and then again from July 6 - August 3, 2023. (Doc. 14). While in segregation the second time, from July 6 - August 3, 2023, Plaintiff claims that he was singled out, and his personal property was withheld without a rational reason. Following a merit review of the First Amended Complaint, pursuant to 28 U.S.C. § 1915A, Plaintiff is currently proceeding on the following claims:

  **Count 7:**  Eighth Amendment claim against Edwards for housing Plaintiff in unconstitutional conditions from November 5, 2022, through November 23, 2022.

**Count 8:** Eighth Amendment claim against Garcia for housing Plaintiff in unconstitutional conditions from July 6, 2023, through August 18, 2023.

**Count 9:** Fourteenth Amendment equal protection claim against Garcia, White, and Hall[1] for withholding Plaintiff's personal property with no rational basis but returning personal property to other inmates.

(Doc. 20). This matter is before the Court on a motion for summary judgment on the issue of exhaustion filed by Defendants Wills, White, Hall, Garcia, and Edwards (Doc. 58). Plaintiff has filed a response and supplement in opposition. (Doc. 80, 90).[2]

## LEGAL STANDARDS

### *I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### *II. Exhaustion of Administrative Remedies*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[1] Defendants White and Hall were previously identified as John Doe 1 and John Doe 2. (*See* Doc. 44).
[2] On August 11, 2025, Plaintiff notified the Court that he did not receive a Rule 56 Notice from Defendants along with their Motion for Summary Judgment. (Doc. 93). The Court entered a Rule 56 Notice and granted Plaintiff additional time to supplement his response to the motion for summary judgment, if needed. Plaintiff has filed two motions stating that he wishes to "stand on (Doc. 80) response to summary judgment." (Doc. 99, 100). The motions are **GRANTED**.

remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F. 3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit his findings to the Chief Administrative Officer (CAO) within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board (ARB). *See* 20 ILL. ADMIN.

CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO, and copies of "the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

## ANALYSIS

**Count 7: Eighth Amendment claim against Edwards for housing Plaintiff in unconstitutional conditions from November 5, 2022, through November 23, 2022.**

Defendants argue that Plaintiff failed to follow the grievance process for any of the allegations in his First Amended Complaint for the period of November 5 - 23, 2022, and therefore, Count 7 should be dismissed. (Doc. 59, p. 9).

Plaintiff responds that the administrative process was not available to him in relation to his claims in Count 7. (Doc. 80, p. 4). Plaintiff first asserts that the remedies were unavailable because he did not receive responses to his grievances. He claims that while he was in segregation, he submitted grievances dated November 8, 2022, November 10, 2022, and November 14, 2022. (*Id.*). After not receiving responses to these three grievances, Plaintiff filed a grievance dated November 28, 2022, directly with the ARB because he did not know what else to do. (*Id.* at p. 5). He states that he was not provided an orientation manual describing the grievance process when he arrived at Menard on October 22, 2022, and although he understands the three step grievance process, Plaintiff claims that he did not know how to proceed when a grievance goes unanswered. (*Id.* at p. 5, 6).

Plaintiff states that when he was released from segregation and placed into protective custody on November 23, 2022, he spoke with Counselor Valleroy about not receiving responses to his grievances. (Doc. 80, p. 5). According to Plaintiff, Valleroy told him to "let them catch up in the mail." (*Id.*). That same day, Plaintiff filed Grievance #46-12-22 and received an answer from

his counselor on January 27, 2023.[3] (*Id.*; Doc. 59-3, p. 2). Plaintiff states that he found it "odd" that he received an answer to Grievance #46-12-22 but not his previously filed grievances. (Doc. 80, p. 5). He claims he sent several "kites" to Valleroy stating that he was not receiving responses to his November grievances, but Valleroy also did not respond to the kites. (*Id.*).

Plaintiff asserts that he next submitted a grievance on December 11, 2022, which included complaints about his living conditions while in segregation. (Doc. 80, p. 5). Whilst he submitted the December 11, 2022 grievance, Plaintiff also filed a grievance dated December 4, 2022. He claims he did not receive a response to either grievance. (*Id.*).

On December 20, 2022, Plaintiff received a response from the ARB to his November 28, 2022 grievance. (Doc. 80, p. 6). The ARB denied the grievance, and Plaintiff was instructed to resubmit the grievance after obtaining responses at the institutional level and providing dates of the alleged incidents. Plaintiff says he was "lost" because the grievance had contained dates. (*Id.*). Plaintiff argues that because he properly submitted grievances dated November 8, 2022, November 10, 2022, November 14, 2022, December 4, 2022, and December 11, 2022, pertaining to his living conditions in segregation but did not receive responses, the process was effectively unavailable to him.

Second, Plaintiff argues that the process was rendered unavailable because at certain times he was not provided blank grievance forms. (Doc. 80, p. 1, 3, 6). He claims that when he was not provided additional grievance forms, he attempted to copy blank grievance forms at his own expense, but he was prevented from doing so. Plaintiff states that there is a law library policy that prohibits the copying of grievance forms that do not contain the signature of a counselor, grievance officer, or chief administrative officer. (*Id.*). Plaintiff asserts that after filing the two grievances on

---

[3] Plaintiff states that Grievance #46-12-22 does not pertain to his living conditions while he was in segregation in November 2022, and he admits that he did not pursue this grievance any further following first level review. (Doc. 80, p. 5). Accordingly, this grievance does not exhaust Plaintiff's claims in Count 7.

December 11, 2022, he was denied grievance forms by all staff, including Counselor Valleroy. (*Id.* at p. 6). According to Plaintiff, he did not receive another grievance form until February 2023. (*Id.* at p. 6).

Third, Plaintiff argues that the process was unavailable to him because the "kite policy is inadequate and [an] insufficient way to document correspondence between inmates and their counselors to address issues and following up grievance responses." (Doc. 80, p. 3). And finally, Plaintiff argues that the process was unavailable because he did not have daily access to the grievance box. (*Id.* at p. 4).

While strict compliance with the exhaustion requirement is the rule in this Circuit, an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Wallace v. Baldwin*, 55 F.4th 535, 542-44 (7th Cir. 2022). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642. Plaintiff has created a question of fact regarding whether the grievance process was available to him by asserting that the grievances dated November 8, 2022, and December 11, 2022, went unanswered. If properly filed as Plaintiff asserts, the content of these grievances sufficiently allowed for meaningful review of Plaintiff's complaints.

In the November 8, 2022 grievance, Plaintiff writes that he is being held in a "nasty cell" that has a dirty toilet and mattress. (Doc. 80, p. 11-12). He complains that he has not been given hygiene items, cleaning supplies, or the ability to shower. Plaintiff writes that the cell is extremely cold and that he has not been provided blankets. He grieves that he tried to seek help from the gallery officer, but gallery officer ignored his requests for assistance. (*Id.*). In the December 11, 2022 grievance, Plaintiff writes that he previously filed grievances on November 8, 10, and 14, 2022, about his living conditions in segregation but those grievances went unanswered. (*Id.* at p. 13-14). He claims that at the time he submitted the previous grievances, he did not know his gallery

officer's name, but he now identifies his gallery officer as Edwards. Plaintiff grieves that Edwards told him he would not "receive anything until [he] came off 'pink tag.'" (*Id.*). Again, Plaintiff claims that his segregation cell had been dirty and cold, with mold on the walls, a stained mattress, a filthy toilet, and a rusty door. He states that Edwards would not help him when he asked for assistance. (*Id.*). Both grievances sufficiently describe Plaintiff's Eighth Amendment claim as stated in Count 7 – that he was held in cold and unsanitary conditions from November 5, 2022, through November 23, 2022, and that he alerted the gallery officer, Defendant Edwards, who failed to assist him or otherwise alleviate the threat to his health and safety.

The Court recognizes that there is nothing on the grievances themselves or in the record to support Plaintiff's claim that they were submitted to the counselor for first level review. Additionally, to the extent Plaintiff is claiming they are copies of the grievances he submitted but not returned to him– made by either a copying machine or handwritten duplicate – he has asserted that he was prohibited from making copies unless the grievance had the signature of staff and that he did not have extra blank grievance forms. These discrepancies, however, are credibility determinations that the Court will not make based on the record. Plaintiff has raised a genuine dispute about whether his administrative remedies were available by claiming the grievances dated November 8, 2022, and December 1, 2022, went unanswered and by asserting that he was denied grievance forms after December 11, 2022. See *Jackson v. Esser*, 105 F. 4th 948, 957 (7th Cir. 2024). Therefore, summary judgment is denied as to Count 7.

As for the grievances dated November 10, 2022, November 14, 2022, and December 4, 2022, the Court finds that even if properly submitted, these grievances cannot serve to exhaust Plaintiff's Eighth Amendment claim against Defendant Edwards. (Doc. 14, p. 26-28, 34-35). In the November 10 grievance, Plaintiff complains about not receiving a shower in five days and being denied video visits; in the November 14 grievance, Plaintiff states that he was wrongfully

Page 7 of 15

issued a disciplinary ticket and denied due process during the subsequent disciplinary hearing; and in the December 4 grievance, Plaintiff complains of being denied access to the law library, legal documents, grievance forms, the grievance boxes, mental health services, and the kiosk machine to communicate with family. (*Id.*). There is nothing from the grievances to indicate that Plaintiff was complaining about the unsanitary and cold conditions of his segregation cell and that his gallery officer was ignoring his requests for assistance. *See* 20 ILL. ADMIN. CODE § 504.810(b); *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014). Thus, they could not have alerted prison officials of Plaintiff's complaints against Edwards regarding his cell condition.

The Court finds Plaintiff's remaining arguments that the grievance process was rendered unavailable to him because of the "kite policy" and lack of availability to the grievance boxes not well taken. Plaintiff states inmates at Menard can follow-up or inquire on the status of a grievance by sending a "kite." The kite process, however, is flawed because the kites are not properly documented and are often not responded to or ignored by staff. Because Menard does not properly document these correspondences, the administrative remedy process is rendered unavailable. (Doc. 80, p. 3). The grievance process, as stated in the Illinois Administrative Code, does not require inmates to follow-up on filed grievances by submitting "kites." Thus, failure by the institution to properly document and respond to kites does not render the grievance process unavailable. *See Thomas v. Kolhouse,* No. 24-1351, 2025 WL 1483373, at *3 (7th Cir. 2025) ("the PLRA does not mandate specific procedures; prison regulations define what is (and is not) required of an inmate to properly exhaust" (citing *Jones v. Bock,* 549 U.S. 199, 218 (2007))).

Plaintiff claims that because the grievance box was not passed around daily or easily accessible while he was in protective custody, his administrative remedies were unavailable. (Doc. 80, p. 4, 5, 6). He asserts that while he was in protective custody, it was "complicated to reach the grievance box," and the grievance box was "way out of reach and inaccessible." (*Id.* at p. 5, 6).

These conclusory assertions, however, are not sufficient to create a genuine issue of material fact regarding the availability of the grievance process. While Plaintiff may have liked the grievance box to be passed around daily while he was in restrictive housing or have the grievance box located at a more convenient location when he was in protective housing, he provides no details regarding how not having daily access to the grievance box prevented him from timely submitting a grievance. *See Williams v. Spiller,* No. 22-cv-756-RJD, 2024 WL 3949437, at *6 (S.D. Ill. 2024) (noting that the plaintiff did not "provide any explanation as to why he could not wait a few days for the grievance box to be circulated within his housing unit"). *See also Wallace,* 55 F. 4th at 543 (the "unavailable" exception is meant to be narrow").

**Counts 8 and 9: Eighth Amendment claim against Garcia for housing Plaintiff in unconstitutional conditions from July 6, 2023, through August 18, 2023, and Fourteenth Amendment equal protection claim against Garcia, White, and Hall for withholding Plaintiff's personal property during the same period of time.**

Plaintiff argues that his administrative remedies were unavailable to him because he did not receive timely responses to eleven grievances: Grievances #293-7-23, #370-7-23, #462-7-23, #32-8-23, #106-8-23, #163-8-23, #164-8-23, #194-8-23, #364-8-23, and #365-8-3-23 and a grievance dated July 6, 2023. (Doc. 80, p. 7). He asserts that Counselor Valleroy took affirmative steps to delay responding to his grievances related to this case. (*Id.*).

The Court agrees with Defendants that Grievance #32-8-23 does not serve to exhaust Plaintiff's claims in this case. Grievance #32-8-23 is dated July 23, 2023, and Plaintiff received confirmation that the grievance had been received and forwarded to the grievance officer for a response on August 1, 2023. (Doc. 59-1, p. 3; Doc. 14, p. 68). The grievance was reviewed by the chief administrator and returned to Plaintiff on November 28, 2023. (Doc. 59-1, p. 1, 7). Plaintiff appealed Grievance #32-8-23. (Doc. 59-2, p. 1). He initiated this lawsuit prematurely on August 15, 2023, before completing all three steps of the grievance procedures and receiving a response

from the ARB.

Plaintiff argues that he went ahead and initiated this suit because he did not receive a response to Grievance #32-8-23 by the grievance office within the 60-day time frame. (Doc. 80, p. 7). He believes that the delay in responding to the grievance was intentional because Grievance #32-8-23 remained pending while he received responses to other grievances that had been submitted after he had filed Grievances #32-8-23. (*Id.* at p. 8). Plaintiff asserts that because this grievance was responded to later, this demonstrates misconduct on the part of staff. Therefore, the grievance process was rendered unavailable, allowing him to move forward with the prosecution of this claims. (Doc. 80, p. 7).

These arguments are not well taken for two reasons. First, Plaintiff did not wait 60 days to initiate this case after filing Grievance #32-8-23. As mentioned, Grievance #32-8-23 is dated July 23, 2023, and Plaintiff filed this lawsuit on August 15, 2023, less than 30 days later. Even though the Court struck the original Complaint for misjoinder of parties and claims, the Complaint and First Amended Complaint contain similar allegations and so Plaintiff was required under the PLRA to have administratively exhausted his remedies when he first brought the suit. *See Hoban v. Anderson*, 688 F. App'x 385, 389 (7th Cir. 2017); *Thompson v. Swisher*, No. 19-cv-1058-RJD, 2022 WL 2817438, at *4 (S.D. Ill. 2022) (holding that the plaintiff had not exhausted where the original and amended complaint related to the same incident).

Second, "any processing delays do not relieve a prisoner of the obligation to exhaust." *Matthews v. Pitzen*, Case No. 24-1358, 2024 WL 4850498, at *2 (7th Cir. 2024) (citing *Ross v. Blake*, 578 U.S. 632, 638-39 (2016)). Some grievances may take longer to process than others and the 60-day timeframe for a grievance officer to issue a response is not a hard deadline. *See Ford,* 362 F.3d at 400. The grievance procedures provide that the grievance officer shall "report his or her findings and recommendations in writing to the Chief Administrative Officer within two

months after receipt of the written grievance, *when reasonably feasible under the circumstances.*" 20 ILL. ADMIN. CODE §504.830(e) (emphasis added). The grievance process does not automatically become unavailable when prison officials fail to meet an aspirational deadline or because some grievances are processed faster than others. *See Ford,* 362 F. 3d at 400. Nothing in the record indicates that the grievance process was unavailable to Plaintiff when he submitted Grievance #32-8-23, and he filed this case before the grievance was exhausted.

The Court also finds that even if Plaintiff did not receive a timely response to the grievance dated July 26, 2023, it also cannot serve to exhaust Plaintiff's claims against Garcia, White, and Hall, in Counts 8 and 9, as the content of grievance does not cover the allegations in the First Amended Complaint. *See Russell v. Wexford Health Sources, Inc*., No. 19-cv-681-MAB, 2021 WL 793994, at *3 (S.D. Ill. Mar. 2, 2021) (stating that even if a plaintiff was thwarted from completing the grievance process, "the Court must also look at whether the content of the grievances was sufficient" (citing *Sapp v. Kimbrell*, 623 F. 3d 813, 823-24 (9th Cir. 2010))).

In the July 26, 2023 grievance, Plaintiff complains that since being placed in restrictive housing, his requests for medical attention, mental health care, and clinical services have been ignored. (Doc. 14, p. 66). He also states that he is not receiving responses to his grievances, and he is not being provided grievance forms, money vouchers, or visiting/phone lists. (*Id.* at p. 67). Plaintiff asserts that his counselor, Counselor Valleroy, is not doing his duties, and Plaintiff believes there is corruption in the system, which is why he is not receiving proper medical and mental health treatment or due process within the disciplinary and grievance processes. (*Id.*). Plaintiff requests a transfer to a facility located in the Northern or Central District, "every ticket caught in the Southern District that did not follow the due process protocol and procedures," and preservation of hallway camera footage for July 26, 2023. (*Id.*). Plaintiff includes a detail about being placed in a "condemned cell with no operable running water" and a lack of ventilation and

air conditioning, but the grievance does not refer to Garcia, White, or Hall by name, title, or description, nor does it describe any conduct attributable to them. The grievance fails to adequately notify prison officials of the poor conditions of Plaintiff's segregation cell as described in the First Amended Complaint, "filthy with no cleaning supplies," that Garcia was withholding cleaning supplies from him, and how staff was intentionally withholding all his property for no reason, while at the same time distributing property to other inmates in segregation. (*See* Doc. 14, p. 9-10). *Roberts,* 745 F.3d at 236; *Waldrop v. Wexford Health Sources, Inc.*, 646 F. App'x 486, 490 (7th Cir. 2016) (unpublished opinion). Thus, the grievance dated July 26, 2023, could not have exhausted Plaintiff's claims.

As to the other nine grievances, the Court finds that Defendants have not met their burden of demonstrating that Plaintiff's administrative remedies were available to him. Plaintiff filed these grievances "pertaining to living conditions in Menard's restricted housing" (Doc. 80, p. 7) in July and August of 2023, and while receipt of these grievances by Menard is established in the record (Doc. 81-2, p. 9 -10), there are no copies of these grievances,[4] and it appears that some have not even completed second level review as of November 2024, some have been improperly recorded, and some have been lost.

On November 22, 2024, Plaintiff received a counselor response from Counselor Mulholland reporting that a "clerical error" was found pertaining to Grievances #293-7-23, #370-7-23, #106-8-23, #163-8-23, and #364-8-23. (Doc. 90, p. 5). Plaintiff is informed in the response that these grievances are eligible for "resubmission." (*Id.*). Because Plaintiff is directed to resubmit these grievances, the Court interprets the "clerical error" to mean the institution has lost the grievances. Counselor Mulholland continues that Grievance #365-8-23 "is not assigned to Lyons."

---

[4] Plaintiff states that copies of the grievances were not produced during initial discovery. (Doc. 80, p. 7).

(*Id.*). The status of this grievance is also unclear as Plaintiff's Cumulative Counseling Summary attributes Grievance #365-8-23 to Plaintiff and records that the "Grievance Office received grievance #365-8-23" on August 14, 2023. (Doc. 81-2, p. 9). Plaintiff also received a confirmation notice after submitting this grievance. (Doc. 14, p. 74). Counsel Mulholland further writes that Grievances #462-7-23 and #164-8-23 are pending second level review. (Doc. 90, p. 5). This supports Plaintiff's contention that Grievance #462-7-23 was never returned to him, which is why it was not appealed to the ARB but contradicts the documents submitted by Defendants. In the Cumulative Counseling Summary, it is recorded that the grievance completed second level review and was returned to Plaintiff on November 30, 2023. (Doc. 81-2, p. 6). Also, Defendants have provided a copy of the grievance officer's report of Grievance #462-7-23 signed by both the grievance officer and the chief administrative officer. (Doc. 59-1, p. 7). Again, it is not clear what happened to Grievances #462-7-23 and #164-8-23 and why it has taken over a year to receive a second level review. *See Jones v. Lamb,* 124 F. 4th 463, 468 (7th Cir. 2024) ("When prison officials fail to timely respond to a prisoner's grievances…administrative remedies are unavailable.") (citations omitted). And finally as to Grievance #194-8-23, while the Cumulative Counseling Summary confirms receipt of Grievance #194-8-23 on August 7, 2023, there is no record that it was ever reviewed. (Doc. 81-2, p. 9).

Defendants argue that Plaintiff filed his lawsuit days after submitting the nine grievances failing to give Menard any amount of time to respond to any of the grievances and that Plaintiff failed to take necessary steps to ensure that his grievances were properly resolved. (Doc. 81, p. 3). The Court agrees that the grievance procedures do not provide strict deadlines by which prisons officials are to respond to grievances. (*Id.* at p. 2). And as previously stated, "processing delays do not relieve a prisoner of the obligation to exhaust." *Matthews,* 2024 WL 4850498, at *2. However, administrative remedies must first be available. Defendants bear the burden on exhaustion, and

"they must do more than point to a lack of evidence in the record; rather they must establish affirmatively that the evidence is so one-sided that no reasonable factfinder could find that [the plaintiff] was prevented from exhausting his administrative remedies." *Schaefer v. Bezy,* 336 F. App'x 558, 560 (7th Cir. 2009) (citing *Reserve Supply Corp. v. Owens–Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992)). Plaintiff has stated that the grievance process was unavailable to him and presented evidence that grievances were either lost or went without a response for over a year. The Court cannot say that, as a matter of law, Defendants have met their burden of demonstrating the grievance process was available when he submitted the nine grievances regarding the claims in this case. Thus, the motion for summary judgment is denied as to Counts 8 and 9.

Because there is a factual dispute over whether administrative remedy process was available to Plaintiff, an evidentiary hearing is required. *See Pavey v. Conley,* 544 F. 3d 739, 741-42 (7th Cir. 2008), *abrogated by Perttu v. Richards,* 605 U.S. 460 (2025).[5] If Defendants would like to pursue this affirmative defense for failure to exhaust administrative remedies any further at this point, they have fourteen days (14) from the date of this Order to request a *Pavey* hearing. If a hearing is requested, the issues the Court will consider are limited to (1) as to Count 7, whether Plaintiff properly submitted the grievances dated November 8, 2022, and December 1, 2022, or whether his administrative remedies were unavailable to him because these two grievances went unanswered and Plaintiff was denied grievance forms from December 11, 2022 through February 2023 (*see* Doc. 80, p. 6); and (2) as to Counts 8 and 9, whether the grievance process was rendered unavailable to him when he attempted to grieve Grievances #293-7-23, #370-7-23, #462-7-23,

---

[5] Plaintiff is proceeding on two Eighth Amendment claims regarding unconstitutional cell conditions and a Fourteenth Amendment for the withholding of his property in violation of the Equal Protection Clause. As there are no common facts that impact the merits of Plaintiff's underlying claims against Defendants and whether he exhausted his administrative remedies, the issue of exhaustion maybe resolved by the undersigned.

#106-8-23, #163-8-23, #164-8-23, #194-8-23, #364-8-23, and #365-8-3-23. The parties will be expected to present evidence only on these issues, if a *Pavey* hearing is held. If Defendants do not request a *Pavey* hearing, the Court will enter a new scheduling and discovery order lifting the stay on merits discovery, or the parties may request that the case be referred for a settlement conference.

### DISPOSITION

For the reasons provided, the Motion for Summary Judgment for on the Issue of Exhaustion of Administrative Remedies filed by Defendants Wills, Edwards, Garcia, White, and Hall is **DENIED.** (Doc. 58).

Defendants must file a notice within fourteen (14) days of this Order either withdrawing their affirmative defense based on exhaustion of administrative remedies for Counts 7, 8, and 9 or requesting a *Pavey* hearing. Failure to file a notice by this deadline and in compliance with this Order will result in a waiver of this affirmative defense for Counts 7, 8, and 9.

The Motions to Stand filed by Plaintiff are **GRANTED**. (Doc. 99, 100).

**IT IS SO ORDERED.**

**DATED: September 19, 2025**

                                           *s/Stephen P. McGlynn*
                                           **STEPHEN P. MCGLYNN**
                                           **United States District Judge**